**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 23-20627-CIV-ALTMAN**

**OMAR J. ROSS, SR.**,

    *Plaintiff*,

*v.*

**CORRECTION HEALTH SERVICES-**
**JACKSON HEALTH SERVICES,** *et al.*,

    *Defendants.*
_____/

## ORDER

Our Plaintiff, Omar J. Ross, Sr., was incarcerated at the Metro West Detention Center—a jail operated by the Miami-Dade Department of Corrections ("DOC"). *See* Complaint [ECF No. 1] at 7. Ross says that, while he was at Metro West, he suffered from "ADHD, back pain, bone spurs . . . and dental issues." *Ibid.* He has now filed a civil-rights complaint under 42 U.S.C. § 1983 against the Miami-Dade DOC and four other Defendants for what he describes as "an official custom and policy or practice of [sic] deliberate indifference." *Id.* at 10. After careful review, we find that the Complaint fails to state a viable claim against any of the five Defendants. We therefore **DISMISS** the Complaint *without* prejudice and give Ross one chance to amend.

### THE LAW

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added). The definition of a "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." §1915A(c). In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint, or any portion of the

complaint," when it is: (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief." § 1915A(b).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (cleaned up).

## ANALYSIS

Ross alleges that the five Defendants were deliberately indifferent to his serious medical needs. *See* Complaint at 15. *First*, Ross claims that Corrections Health Services—"the company that contracts with Miami Dade County to provide healthcare for detainees"—has a policy or custom of "refusing to provide ADHD medication" and of "delaying or denying . . . medically necessary mental, medical, or dental care." *Id.* at 7–9. *Second*, Ross submits that the Miami-Dade DOC has an unconstitutional policy or custom of "ignoring Plaintiff's grievances of serious medical need[s.]" *Id.* at 10. *Third*, Ross avers that three separate "facility Bureau Supervisors"—"N. Basiten," "M. Delinois," and "J. Hernandez"—all "received Plaintiff's grievances about not getting care from Jackson Health Services" but either "did not follow through with making sure that the Plaintiff's serious medical needs were cared for" or, worse, "did not respond at all" to the Plaintiff's legitimate grievances. *Id.* at 11–14. Ross has sued all five Defendants in their *official* capacities—and he's added *individual*-capacity claims against the three "facility Bureau Supervisors[.]" *Id.* at 4–5.

This is not the first time Ross has brought these claims in federal court. Just last year, in fact, Ross filed a nearly identical § 1983 complaint against these same Defendants. After reviewing that complaint, Judge Darrin P. Gayles dismissed the case and had this to say about Ross's claims:

> Plaintiff's Complaint is factually deficient. Although he alleges a variety of potentially serious medical needs, he fails to allege that any Defendant has acted with deliberate indifference to those needs. First, Plaintiff does not name an individual medical provider, such as a doctor or nurse, who refused to treat his conditions. Rather, he brings a claim against Jackson Health Services, the private entity that provides medical services to detainees at the Metro-West Detention Center. To state a § 1983 claim for deliberate indifference against a private entity that performs traditionally state-run functions, a plaintiff must allege that the entity "had a 'policy or custom' of deliberate indifference that led to the violation of his constitutional right." *Jackson v. Corizon Health, Inc.*, No. 20-14737, 2022 WL 303288, at *5 (11th Cir. Feb. 2, 2022) (quoting *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011)). A policy or custom can be established by showing "a pattern of similar violations." *Id.* Plaintiff does not allege that Jackson had a policy or custom of deliberate indifference, so he has failed to state a claim against this Defendant.
>
> Second, Plaintiff alleges that he submitted grievances about the denial of medical treatment to three supervisors at Metro-West: N. Bastien, M. Delinois; and J. Hernandez. But the Complaint does not allege any other facts against these Defendants. As such, Plaintiff cannot show that these Defendants were subjectively aware of his medical conditions and deliberately disregarded those conditions by conduct that was more than gross negligence. *See* [*Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007)].
>
> And third, Plaintiff has not stated a claim against the Miami-Dade Department of Corrections. The Court liberally construes this claim as a claim against Miami-Dade County. *See Dumond v. Miami Dade Dep't of Corr. & Rehab.*, No. 1:21-CV-22917-RLR, 2021 WL 4241287, at *2 (S.D. Fla. Aug. 19, 2021) ("A suit against Miami-Dade Department of Corrections is akin to a suit against Miami-Dade County"). To state a § 1983 claim against a municipality, Plaintiff must allege that the constitutional violation resulted from the municipality's official custom, policy, or practice. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *see also Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). As with Jackson Health Services, Plaintiff has not alleged an official custom, policy or practice of Miami-Dade County that caused the constitutional violation. Accordingly, Plaintiff has failed to state a claim against Miami-Dade County. In sum, the Complaint fails to state a claim against any Defendant.

Order Dismissing Complaint Without Prejudice, *Ross v. Corr. Health Servs.-Jackson Health Servs.*, No. 22-21488-CIV (S.D. Fla. June 10, 2022) (Gayles, J.), ECF No. 7 at 3–4 (cleaned up).[1] As we'll soon see, these very same problems afflict Ross's current Complaint.

I.    **The Unconstitutional Custom or Policy**

In Ross's view, Corrections Health Services followed an unconstitutional custom or policy that prevented Ross and other inmates at Metro West from receiving essential medical care. *See* Complaint at 9 ("[Corrections Health Services] had a policy or custom [of] delaying or denying giving Plaintiff and others medically necessary mental, medical, or dental care[.]"). The DOC then enabled this unconstitutional practice by either failing to respond to grievances about Correctional Health Services or, "when they did respond[,] . . . they didn't respond appropriately or follow through[.]" *Id.* at 10.

Because Ross was a pretrial detainee at Metro West, "[his] rights exist[ed] under the due process clause of the Fourteenth Amendment rather than the Eighth Amendment." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009). Still, a deliberate-indifference claim under the Fourteenth Amendment is "subject to the same level of scrutiny" as an Eighth Amendment claim. *Ibid.* To show that a defendant was deliberately indifferent to a serious medical need, Ross must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between the indifference and the plaintiff's injury." *Id.* at 1306–07 (citing *Goebert*, 510 F.3d at 1326). To sue a municipality[2] in its official capacity under § 1983, Ross must "identify a municipal policy or custom

---

[1] Judge Gayles later dismissed the case without prejudice because Ross "[had] not paid the filing fee or filed a new IFP motion that complies with 28 U.S.C. § 1915." Order Dismissing Case, *Ross v. Corr. Health Servs.-Jackson Health Servs.*, No. 22-21488-CIV (S.D. Fla. July 19, 2022), ECF No. 9 at 1.

[2] We agree with Judge Gayles that suing Corrections Health Services and the Miami-Dade DOC is, for § 1983 purposes, no different than suing Miami-Dade County itself. *See Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) ("When a private entity like PHS contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state. In so doing, it becomes the functional equivalent of a municipality." (cleaned up)); *Dumond*, 2021 WL 4241287, at *2 ("A suit against [the] Miami-Dade Department of Corrections is akin to a suit against

that caused his injury." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (cleaned up). He can do this by identifying either "an officially promulgated [policy]" or "an unofficial custom or practice . . . shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc) (citing *Monell*, 436 U.S. at 690–91).

For three reasons, Ross has failed to state a plausible claim against *either* Corrections Health Services *or* the Miami-Dade DOC. *First*, Ross hasn't shown that either Defendant has implemented an unconstitutional custom or policy. A municipal defendant can be held liable under § 1983 in three situations: (1) on the basis of "an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council)"; (2) "if final policy makers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure"; or (3) "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016) (cleaned up). For the second and third categories (which rely on unofficial customs or practices), the plaintiff must show "[a] pattern of similar constitutional violations[.]" *Craig*, 643 F.3d at 1310 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). In other words, the plaintiff must show that the unconstitutional custom is "persistent and wide-spread" because "random acts or isolated incidents" aren't enough to establish municipal liability under § 1983. *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004); *see also, e.g.*, *NAEH Media Grp. LLC v. City of Lauderhill, Fla.*, 2023 WL 2263673, at *6 (S.D. Fla. Feb. 28, 2023) (Altman, J.) ("Because the Plaintiffs haven't alleged any facts to suggest that the closure of their business was part of a widespread practice rather than an isolated event, they've failed to plead an unconstitutional practice (or custom) under *Monell*." (cleaned up)).

---

Miami-Dade County, which has the capacity to sue and be sued." (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991))).

5

Ross hasn't plausibly alleged that the Defendants *either* promulgated an unconstitutional policy *or* followed an unconstitutional practice. For starters, Ross says nothing about the enactment of "an official policy." He, in fact, tells us nothing at all about the Miami-Dade County Board of County Commissioners—the legislative body that controls our Defendants. *See generally* Complaint; *see also Rosario v. Miami-Dade Cnty.*, 490 F. Supp. 3d 1213, 1222–23 (S.D. Fla. 2007) (Ungaro, J.) (finding that "the Miami-Dade County Home Rule Charter provides that the Board of County Commissioners is the legislative and the governing body of the county" when it comes to "jails and related facilities" (cleaned up)). So, he's failed to plead an unconstitutional policy under *Hoefling*'s first prong. *See NAEH Media Grp.*, 2023 WL 2263673, at *5 ("[T]he Complaint never says that the City acted pursuant to 'an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council)' . . . . That's plainly insufficient to satisfy the first avenue to *Monell* liability[.]" (quoting *Hoefling*, 811 F.3d at 1279)).

Nor has Ross properly averred that the Defendants followed some unconstitutional custom of deliberate indifference. Ross (it's true) *does* allege that the Defendants were indifferent to his medical needs on *several* occasions, but he never suggests that they were indifferent to the needs of *other* inmates. *See generally* Complaint at 8–11. Regardless of how the custom is effectuated (by acquiescence or ratification), Ross must allege that the custom is (1) "so settled and permanent that it takes on the force of law" and (2) "persistent and wide-spread." *McDowell*, 392 F.3d at 1290 (cleaned up). And (it probably goes without saying) a "custom" that affects just one of the hundreds of inmates at Metro West just isn't "persistent or wide-spread." *See, e.g., Jennings v. Stewart*, 461 F. Supp. 3d 1198, 1201 (N.D. Fla. 2020) (Winsor, J.) ("Other than his own experience, Jennings offers only a broad and conclusory assertion that 'frequent and customary actions like those set forth herein' demonstrate a de facto policy. But there are no facts to support any inference that such an informal policy existed and that, if it did, it caused the claimed violations." (citing *Craig*, 643 F.3d at 1311)); *Mizell v. Lee*, 829 F. Supp.

1338, 1342 (M.D. Ga. 1993) (Owens, C.J.) ("Merely alleging that the City failed to adequately respond to the allegations of one person is not sufficient to establish a policy based on custom or usage.").[3]

*Second*, Ross hasn't shown that the Defendants were deliberately indifferent to any of his serious medical needs. Ross avers that, between January 24, 2021 and August 2022, Corrections Health Services failed to treat him properly by: (1) "refusing to provide ADHD medication"; (2) "delaying getting Plaintiff x-rays for his back"; (3) "denying getting plaintiff a MRI for his entire back"; (4) failing to "schedule him a podiatry consultation" after an x-ray revealed he had bone spurs; and (5) never scheduling a dental appointment so that Ross could be "treated for dental fillings." Complaint at 8–10. But, even together, these five allegations aren't enough to show deliberate indifference.

For one thing, "[a] condition like ADHD may or may not be a serious medical need, depending on whether it has been diagnosed by a physician as requiring treatment, and thus depending on its persistence and severity." *Taalak v. Pavalis*, 2019 WL 2269969, at *2 (D.S.D. May 28, 2019) (Lange, J.). In other words, unless Ross tells us much more than he has about his ADHD—including whether it's been diagnosed by a physician and how persistent and severe it is—we cannot say that his ADHD constitutes a serious medical need. *See ibid.* ("Taalak's complaint falls short of alleging that her ADHD is a 'serious medical need.' She simply alleges that she has ADHD and is not getting medicated for the disorder."); *Weaver v. Lombardi*, 2015 WL 7253059, at *3 (E.D. Mo. Nov. 17, 2015) (Jackson, J.) ("Plaintiff's unsupported assertion that he experienced symptoms of ADHD is insufficient to create a factual dispute that he suffered from a serious medical need."); *see also Mann*,

---

[3] In an oblique and conclusory reference, Ross claims that Corrections Health Services has "a policy or custom delaying or denying giving Plaintiff *and others* medically necessary mental, medical, or dental care[.]" Complaint at 9 (emphasis added). But he never identifies any such policy. Nor does he suggest that the Defendants ever formally promulgated a policy of the kind he's here complaining about. Most importantly, he gives no examples of Corrections Health Services ever applying this (supposed) custom to any other inmate. And, as one of our wisest colleagues has said: "Merely alleging that [the Defendant] has such a widespread practice is not sufficient[.]" *Wade v. City of Miami Beach*, 565 F. Supp. 3d 1248, 1252 (S.D. Fla. 2021) (Scola, J.).

588 F.3d at 1307 (holding that a "serious medical need" must have "been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention").

For another, Ross's complaints about his back x-rays and MRIs are nothing more than disagreements about the quality and efficacy of the medical treatment he received at Metro West. Ross concedes that, to help diagnose his persistent back pain, Corrections Health Services performed *both* x-rays *and* MRIs on his back. Complaint at 9. He just thinks the Defendants were deliberately indifferent when they imaged only "one section of the Plaintiff's back," even though he'd complained about pain to his "entire back." *Ibid.* That isn't deliberate indifference. "[W]hen a prison inmate has received medical care, courts hesitate to find a [constitutional] violation." *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989). That's because "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" isn't enough to establish a constitutional violation. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

Finally, on Ross's claims that the Defendants unreasonably delayed his appointments with a podiatrist and a dentist, Ross hasn't given us nearly enough information. "[D]elaying the treatment of serious medical needs, even for a period of hours," can amount to deliberate indifference depending on "the reason for the delay and the nature of the medical need[.]" *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). But Ross never tells us how long these delays were—or how severe his conditions were. *See* Complaint at 9. Without that information, we simply cannot say that these delays "lack[ed] any reasonable explanation." *Farrow v. West*, 320 F.3d 1235, 1247 (11th Cir. 2003).

*Third*, all of Ross's official-capacity claims fail because he's seeking money damages. Ross asks for $50,000.00 in compensatory damages and an additional "$10,000.00 or whatever the court deems appropriate in punitive damages." Complaint at 16–18. But the Eleventh Amendment "bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). And, when a

8

plaintiff sues a state entity or a state official in an *official* capacity, he is, in effect, suing the state for damages—something the Eleventh Amendment prohibits. *See Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) ("A state, a state agency, and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable[.]").[4]

*\* \* \**

So, where does that leave Ross now? As a *pro se* litigant, he is entitled to "one chance to amend [his] complaint before the district court dismisses the action," unless, of course, "a more carefully drafted complaint could not state a claim." *Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)). Although we're concerned about the defects we've identified in this Order, we think Ross deserves one more chance to try to state a plausible claim. We'll therefore give Ross leave to file an amended complaint. But we warn Ross that any such amended complaint must follow the directions we've outlined in this Order. *First*, if Ross wants money damages, he cannot sue a defendant in his or her *official* capacity. He must instead bring an individual-capacity claim against the specific individuals who exhibited deliberate indifference to his serious medical needs (*e.g.*, the attending doctors, guards, or nurses). *Second*, to establish that his constitutional rights were violated, Ross must provide more detail (as we've explained in this Order) about the nature of his medical conditions and (for instance) the length of any alleged treatment delays.

---

[4] Ross also requests an injunction against the Miami-Dade DOC "to produce a printout of all transactions in the Plaintiff's prison account for the preceding six (6) months from August 2022[.]" Complaint at 16. But this request for injunctive relief makes little sense. Ross concedes that he hasn't been in the custody of the Miami-Dade DOC since August 2022, *see ibid.*, and he already gave us a proper six-month account statement for his current IFP motion, *see* IFP Motion [ECF No. 3] at 5–6. So, his request for injunctive relief is moot. *See Dow Jones & Co., Inc. v. Kaye*, 256 F.3d 1251, 1254 (11th Cir. 2001) ("A claim for injunctive relief may become moot if . . . interim relief or events have completely and irrevocably eradicated the effects of the alleged violations.").

## II. The Individual-Capacity Claims Against the Bureau Supervisors

Ross's only remaining claims are against "N. Bastien," "M. Delinois," and "J. Hernandez." Ross accuses these "Bureau Supervisors" of receiving Ross's grievances against Corrections Health Services and claims that all three failed to "follow through with making sure Plaintiff's serious medical needs were cared for," "did not respond appropriately," or "did not respond at all." Complaint at 12–14. Here, again, Ross has failed to state a plausible claim.

An inmate has "no entitlement to a grievance procedure under the Federal Constitution." *Wildberger v. Bracknell*, 869 F.2d 1467, 1467 (11th Cir. 1989). A defendant is not liable under § 1983 for either denying or failing to properly respond to a grievance—even if that grievance complains about an unconstitutional act. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.' In the present case, Shehee's only allegations against Crosley, Hambrick, Henry and Miner involve their denial of his administrative grievances and their failure to remedy the alleged retaliatory behavior. . . . [The Defendants did not] commit[ ] a constitutional violation[.]"); *Gillis v. Smith*, 2022 WL 1516311, at *8 (M.D. Ga. May 13, 2022) (Weigle, Mag. J.) ("Moreover, allegations of a defendant's involvement in the processing of a prison grievance regarding medical care specifically fails to demonstrate a defendant's personal involvement in the alleged constitutional misconduct of deliberate indifference to a medical need."), *report and recommendation adopted*, 2022 WL 2287929 (M.D. Ga. June 24, 2022) (Self, J.). Because Ross has failed to allege that the "Bureau Supervisors" actively violated his constitutional rights, we dismiss his individual-capacity claims against them.

\* \* \*

We therefore **ORDER AND ADJUDGE** as follows:

1. The Plaintiff's Complaint [ECF No. 1] is **DISMISSED**.

2. Ross shall file an **Amended Complaint** by **April 7, 2023**. The Plaintiff must label the document "Amended Complaint" and must include the case number referenced above, so that it will be filed in this case. The Amended Complaint must comply with this Court's previous orders, be filed on the form complaint for civil-rights actions, adhere to the Federal Rules of Civil Procedure, state all plausible claims against all Defendants, and not exceed twenty pages in length. The Clerk is **DIRECTED** to provide the Plaintiff with a copy of this Court's form complaint for civil-rights cases. Filing an Amended Complaint that doesn't comply with this Order, the Court's other orders, the Local Rules, or the Federal Rules of Civil Procedure may result in the Court dismissing *the entire case* for failure to prosecute or for failure to comply with court orders. *See* FED. R. CIV. P. 41(b).

3. The Plaintiff's motion to proceed *in forma pauperis* [ECF No. 3] is **GRANTED**. The Plaintiff shall owe the United States $350.00, which the Plaintiff must pay to the Clerk of Court as funds become available. To effectuate those payments, the agency with custody over the Plaintiff must forward these payments from the Plaintiff's prisoner account to the Clerk of Court anytime the account balance exceeds $10.00. That agency shall continue to make these payments until the Plaintiff has paid the filing fees in full.

4. The Clerk shall **CLOSE** this case until the Plaintiff files his Amended Complaint.

**DONE AND ORDERED** in the Southern District of Florida on March 13, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: Omar J. Ross, *pro se*

Florida Department of Corrections
Bureau of Finance and Accounting
Inmate Trust Fund Section, Centerville Station
P.O. Box 12100
Tallahassee, FL 32317

Financial Department,
United States District Court, Southern District of Florida